IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOHN CHARLES JACKSON,

    Plaintiff,

vs.

FEDERAL CORRECTIONAL INSTITUTION ("FCI"), HERLONG, HEALTH SERVICES, et al.,

    Defendants.

No. 2:11-cv-2116 KJN P

ORDER

/

Plaintiff is a federal prisoner proceeding without counsel. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983,[1] and is proceeding in forma pauperis. Plaintiff, the only appearing party, consented to proceed before the undersigned for all purposes. See 28 U.S.C. § 636(c).

By order filed July 5, 2012, plaintiff's second amended complaint was dismissed with leave to file a third amended complaint. On August 6, 2012, plaintiff filed a four page third amended complaint. (Dkt. No. 25.) However, before the court screened this complaint, plaintiff

---

[1] Actions under § 1983 and those under Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971), are identical save for the replacement of a state actor under § 1983 by a federal actor under Bivens. See Van Strum v. Lawn, 940 F.2d 406, 409 (9th Cir. 1991) (same). When reviewing a Bivens action for which there is no case on point, § 1983 cases are applied by analogy. See, e.g., Butz v. Economou, 438 U.S. 478, 504 (1978) (no distinctions for purposes of immunity between state officials sued under § 1983 and federal officials sued under Bivens).

1

filed a fifteen page third amended complaint on September 24, 2012. (Dkt. No. 27.) Because plaintiff filed a subsequent third amended complaint, the court deems the subsequent third amended complaint as the operative complaint.[2]

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous when it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989), superseded by statute as stated in Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) ("a judge may dismiss [in forma pauperis] claims which are based on indisputably meritless legal theories or whose factual contentions are clearly baseless."); Franklin, 745 F.2d at 1227.

A district court must construe a pro se pleading "liberally" to determine if it states a claim and, prior to dismissal, tell a plaintiff of deficiencies in his complaint and give plaintiff

---

[2] The August 6, 2012 third amended complaint also fails to state a cognizable civil rights claim. Plaintiff did not include specific charging allegations as to each named defendant, despite being previously informed that such allegations are required, and alleges only negligent acts, and claims he did not receive the appropriate medical care. Negligence or inadequate medical care, without more, is insufficient to state a claim for deliberate indifference to serious medical needs in violation of the Eighth Amendment. Broughton v. Cutter Lab., 622 F.2d 458, 460 (9th Cir. 1980) ("Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support [an Eighth Amendment] cause of action.")

an opportunity to cure them.  See Lopez, 203 F.3d at 1130-31.  While detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Iqbal, 129 S. Ct. at 1949 (citations and quotation marks omitted).  Although legal conclusions can provide the framework of a complaint, they must be supported by factual allegations, and are not entitled to the assumption of truth.  Id. at 1950.

Plaintiff, a 22 year old male, suffered from testicular torsion,[3] and alleges that defendants' failure to provide adequate medical care resulted in the loss of his right testicle. Although plaintiff alleges violations of his Eighth and Fourteenth[4] Amendment rights, plaintiff's allegations of delayed and inadequate medical care are both based on the Eighth Amendment.

---

[3] Testicular torsion is defined as "an emergency condition due to rotation of the testis and consequent strangulation of its blood supply.  Symptoms are acute scrotal pain and swelling, nausea, and vomiting.  Diagnosis is based on physical examination and confirmed by color Doppler ultrasonography.  Treatment is immediate manual detorsion followed by surgical intervention."  Shenot, Patrick J., M.D., "Testicular Torsion," The Merck Manual for Health Care Professionals (December 2012), http://www.merckmanuals.com/professional/genitourinarydisorders/penile_and_scrotal_disorders/testicular_torsion.html?qt=testicular torsion&alt=sh (visited April 11, 2013).

[4] The Due Process Clause protects against the deprivation of liberty without due process of law.  Wilkinson v. Austin, 545 U.S. 209, 221 (2005).  In order to state a cause of action for a deprivation of due process, a plaintiff must first identify a liberty interest for which the protection is sought.  Id.  The Due Process Clause does not confer a liberty interest in freedom from state action taken within a prisoner's imposed sentence.  Sandin v. Conner, 515 U.S. 472, 480 (1995).

However, except for the attached exhibits,[5] plaintiff's third amended complaint is a duplicate of plaintiff's original complaint, filed on August 10, 2011, which the undersigned dismissed with leave to amend on December 2, 2011. (Compare Dkt. No. 1 at 1-9 with Dkt. No. 27 at 1-9.) As set forth in the December 2, 2011 order, and discussed more fully below, plaintiff's repeated allegations fail to state cognizable Eighth Amendment claims.

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Here, the defendant must act under color of federal law. Bivens, 403 U.S. at 388. Section 1983 requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658, 692 (1978) ("Congress did not intend § 1983 liability to attach where . . . causation [is] absent."); Rizzo v. Goode, 423 U.S. 362 (1976) (no affirmative link between the incidents of police misconduct and the adoption of any plan or policy demonstrating their authorization or approval of such misconduct). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862

---

[5] Exhibits appended to a complaint are a part thereof for all purposes. See Fed. R. Civ. P. 10(c).

(9th Cir. 1979) (no liability where there is no allegation of personal participation); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979) (no liability where there is no evidence of personal participation). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (complaint devoid of specific factual allegations of personal participation is insufficient).

In Estelle v. Gamble, 429 U.S. 97, 106 (1976), the Supreme Court held that inadequate medical care did not constitute cruel and unusual punishment cognizable under § 1983 unless the mistreatment rose to the level of "deliberate indifference to serious medical needs." An official is deliberately indifferent if he both knows of and disregards an excessive risk to an inmate's health. Farmer v. Brennan, 511 U.S. 825, 837 (1994). Thus, to demonstrate deliberate indifference, a plaintiff must establish that the alleged harm was "sufficiently serious" and that the official acted with a "sufficiently culpable state of mind." Id. at 834 (citing Wilson v. Seiter, 501 U.S. 294, 298, 302-03 (1991)).

Thus, a prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 834. Deliberate indifference may be shown "when prison officials deny, delay or intentionally interfere with medical treatment," or in the manner "in which prison physicians provide medical care." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin, 974 F.2d at 1060 (citing Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

> However, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.

> Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.

Estelle, 429 U.S. at 106.  Isolated occurrences of neglect do not constitute deliberate indifference to serious medical needs.  See Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) ("If the harm is an 'isolated exception' to the defendant's 'overall treatment of the prisoner [it] ordinarily militates against a finding of deliberate indifference."); McGuckin, 974 F.2d at 1060; O'Loughlin v. Doe, 920 F.2d 614, 617 (9th Cir. 1990).

Here, plaintiff again named ten defendants.  However, plaintiff failed to include charging allegations as to at least three of the named defendants -- FCI - Herlong Health Services, St. Mary's Regional Medical Center, and James Pelton, M.D.  As plaintiff has been informed, plaintiff must include charging allegations as to each named defendant.

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007).  Therefore, a Bivens action will not lie against the United States, agencies of the United States, or federal agents in their official capacity.  See FDIC v. Meyer, 510 U.S. 471, 486 (1994).  However, the Eleventh Amendment does not bar suits seeking damages from public officials acting in their personal capacities. Hafer v. Melo, 502 U.S. 21, 30 (1991).  "Bivens' purpose is to deter individual federal officers, not the agency, from committing constitutional violations." Correctional Services Corporation v. Malesko, 534 U.S. 61, 62 (2001) (Bivens' limited holding may not be extended to confer a right of action for damages against private entities acting under color of federal law).  Thus, plaintiff cannot state a cognizable claim against defendant FCI - Herlong Health Services.

Moreover, as to defendant St. Mary's Regional Medical Center, the "Ninth Circuit has consistently dismissed private hospitals and doctors in § 1983 claims for failing to come within the color of state law." Coles v. Eagle, 2009 WL 2700210 (D. Haw. 2009), citing Sutton v. Providence St. Joseph Medical Center, 192 F.3d 826, 836-43 (9th Cir. 1999) (private hospital

did not act under color of federal law in Bivens action).[6]  Therefore, it appears plaintiff cannot state a cognizable claim against St. Mary's Regional Medical Center.  It is unclear whether plaintiff can allege a cognizable claim against defendants Laughlin, Michelson, or Pelton, because he does not allege how they acted under color of federal law.  (See n.6.)  Plaintiff has not rectified this defect in subsequent pleadings.

Plaintiff also named three individuals who performed certain medical tests:  (1) Shermi T. Tam performed a CT scan; (2) Rorick Wilkis performed a DX abdomen 1 view; and (3) Dale A. Griffin performed a US retroperitoneal complete.  However, the attachments to plaintiff's original complaint demonstrate that each of these defendants performed these tests at the direction of medical doctors, and each doctor signed each report. (Dkt. No. 1 at 14-16.) None of these reports note that defendants Tam, Wilkis or Griffin are medical doctors, and none of these defendants signed the reports issued from the medical tests performed.  Instead, the records reflect that each defendant performed the specific medical test as ordered by a medical doctor, and each report from each test was verified by a medical doctor.  Plaintiff does not allege that defendants Tam, Wilkis or Griffin performed these tests inaccurately, or that plaintiff was injured during the performance of these tests. Rather, plaintiff alleges each of these defendants "failed to notice a possible 'testicular torsion.'"[7]  (Dkt. No. 27 at 7.)  However, because these defendants are not medical doctors, and were not responsible for plaintiff's medical care,

---

[6] Bivens does not provide a cause of action against purely private conduct.  See Rendall-Baker v. Kohn, 457 U.S. 830, 838-42 (1982) (state support and regulation of a private school did not render school's personnel decisions state action).  However, private conduct that is "fairly attributable" to a government actor may serve as the basis for a Bivens civil rights claim. Lugar v. Edmonson Oil Co., Inc., 457 U.S. 922, 937 (1982).  In Bivens actions, courts apply the same principles used to determine whether a private party acts under color of state law in a § 1983 action.  In the context of physicians who treat prison inmates, "the physician's function within the state system, not the precise terms of his employment, ... determines whether his actions can be fairly attributed to the State."  West v. Atkins, 487 U.S. 42, 55-56 (1988).

[7] However, plaintiff also claims that defendant Wilson may have caused the testicular torsion on October 18, 2010, after defendants Tam, Wilkis and Griffin performed these tests at St. Mary's on October 17, 2010.  (Dkt. No. 1 at 6.)

plaintiff's allegations as to defendants Tam, Wilkis and Griffin fail to state a cognizable civil rights claim.

Plaintiff names "E. Paraiso, MLP,[8] medical employee," as a defendant. Plaintiff alleges that MLP Paraiso "disregarded plaintiff's pains and swollen testicle and complaints that he was still having pains in his abdomen and testicle area." (Dkt. No. 27 at 7.) Plaintiff contends that defendant Paraiso did not refer plaintiff to a doctor, but told plaintiff he had constipation and suggested plaintiff drink lots of fluids and take fiber or Metamucil. (Id.) However, as noted above, plaintiff was previously diagnosed by a medical doctor as having constipation, and Paraiso's recommended treatment comports with the treatment recommended by the doctor at the emergency room on October 17, 2010. Plaintiff also fails to allege any facts demonstrating that defendant Paraiso acted with a culpable state of mind, rather than either misdiagnosing, or having a different opinion as to, plaintiff's condition. A mere difference of opinion between a prisoner and prison medical staff as to appropriate medical care does not give rise to a § 1983 claim. Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981). Plaintiff's allegations as to defendant Paraiso, without more, fail to state an Eighth Amendment violation.

Finally, plaintiff names EMT S. Wilson, an employee of FCI, as a defendant. In the original and the subsequent third amended complaint, plaintiff alleges that on October 18, 2010, defendant Wilson took plaintiff's swollen testicle in his hand and pushed it upward, causing plaintiff excruciating pain. (Dkt. Nos. 1, 27 at 7.) However, in his amended complaint, plaintiff alleges that defendant Wilson did this on October 19, 2010. (Dkt. No. 16 at 8.) Wilson allegedly told plaintiff he was "pushing" plaintiff's testicle back inside. (Id.) Plaintiff alleges Wilson's action "may have even caused the testicle torsion." (Id.) However, plaintiff fails to articulate a culpable state of mind on the part of defendant Wilson. If this occurred on October 19, 2010, it appears that defendant Wilson may have attempted manual detorsion, which the

---

[8] Plaintiff does not define the acronym "MLP," which makes it difficult to determine defendant Paraiso's responsibility, if any, in providing plaintiff medical care.

Merck Manual states is the immediate treatment given prior to surgical intervention.  Id., n.3 infra.  Thus, plaintiff's allegations as to defendant Wilson, without more, fail to state a cognizable civil rights claim.

In addition, plaintiff alleges the delay in treatment caused the loss of his right testicle.  Specifically, plaintiff alleges he began having pain in his abdomen and testicle areas on October 17 through 19, 2010.  (Dkt. No. 27 at 2.)  The medical record appended to the original complaint reflects that on October 17, 2010, paramedics were summoned to FCI-Herlong at 6:28 p.m., arrived at the scene at 7:07 p.m., and plaintiff was transported to St. Mary's Hospital at 7:28 p.m., and arrived at 8:25 p.m.  (Dkt. No. 1 at 13.)  Plaintiff was seen in the emergency room, and had his first medical test, the US retroperitoneal complete, performed at 9:29 p.m.  (Dkt. No. 1 at 19.)  However, the reports from the October 17, 2010 medical tests reflect plaintiff complained of abdominal pain.  (Dkt. No. 1 at 14, 16, 18.)  The Regional Director's response to plaintiff's appeal states that plaintiff was discharged in the evening of October 17, 2010, after receiving treatment for "impression of constipation."  (Dkt. No. 1 at 35.)  On October 19, 2010, plaintiff was evaluated by an EMT for "an emergency for an *onset* of severe right testicular pain," and transported to St. Mary's Hospital for evaluation and treatment.  (Id., emphasis added.)  On October 19, 2010, a scrotal ultrasound exam was performed at 9:37 p.m., and the report noted right testicular pain, and an impression of right testicular torsion.  (Dkt. No. 1 at 17.)  On October 20, 2010, a right orchiectomy was performed due to torsion and gangrene of the right testicle, and plaintiff was discharged later that day.  (Dkt. No. 1 at 35.)

However, it is unclear from the third amended complaint which period or periods of delay plaintiff challenges, and which defendant or defendants plaintiff alleges was responsible for such delay.  This information is important, particularly in light of plaintiff's allegation that he may not have sustained the testicular torsion until October 18, 2010 (dkt. No. 27 at 6), or October 19, 2010 (dkt. no. 16 at 8).  Despite being granted multiple opportunities to articulate which delays plaintiff contends constituted deliberate indifference to plaintiff's serious medical needs,

plaintiff has failed to do so.

Moreover, in connection with plaintiff's amended complaint, plaintiff provided copies of the test results from the hospital. (Dkt. No. 16 at 21-25.) None of the tests reveal a view of plaintiff's testicles, but reflect views of his abdomen, spleen, pancreas, liver, gallbladder, bowel, pelvis, kidneys, and bladder. (Dkt. No. 16 at 21-25.) None of these test results reflect plaintiff suffered from testicular torsion. (Id.) Plaintiff conceded that his discharge impression was "impression of constipation." (Dkt. No. 16 at 7.) The exhibits submitted by plaintiff demonstrate that plaintiff presented with complaints of abdominal and supra pubic pain, and was provided with multiple medical tests, including lab tests and a CT scan, on October 17, 2010. (Dkt. No. 16 at 17-25.) The Emergency Department Record reflects that torsion risk factors were noted as none, and that medical professionals considered the following differential diagnoses during plaintiff's evaluation: appendicitis, constipation, urolithiasis, or UTI (urinary tract infection). (Dkt. No. 16 at 20.) Although the exam notes reflect plaintiff's right testicle was tender to palpation, the diagnosis of testicular torsion was not considered during plaintiff's evaluation, and there are no indications that plaintiff's right testicle was swollen at that time. (Id.) Plaintiff did not complain of scrotal pain, nausea, or vomiting. (Id.)

As stated in this court's March 1, 2012 order:

> Plaintiff's allegations make clear that even he is uncertain when the testicular torsion took place. He suggests that it might have occurred while he was walking 200 yards in pain, or possibly when defendant Wilson attempted to push the testicle back inside. However, it is also possible that the testicular torsion occurred spontaneously. [FN 5] Moreover, documents provided by plaintiff demonstrate that once plaintiff complained of extreme scrotal pain and swelling, plaintiff received urgent medical care. (Dkt. No. 16 at 30.) On October 19, 2010, plaintiff was evaluated by an EMT for "an emergency for an onset of severe right testicular pain," and transported to St. Mary's Hospital for evaluation and treatment. (Id.) On October 19, 2010, a scrotal ultrasound exam was performed at 9:37 p.m., and the report noted right testicular pain, and an impression of right testicular torsion. (Dkt. No. 16 at 34.) On October 20, 2010, a right orchiectomy was performed due to torsion and gangrene of the right testicle, and plaintiff was discharged later that day. (Dkt. No. 1 at 35.) It is unfortunate that

10

> plaintiff's testicular torsion was not earlier diagnosed such that an orchiectomy could have been avoided; however, plaintiff fails to allege facts demonstrating defendants knew of, yet disregarded, an excessive risk to plaintiff's health.
>
>> [FN 5] "Signs and symptoms of testicular torsion may start following:  physical activity, an injury to the scrotum, sleep."  Mayo Clinic staff, "Causes - Testicular Torsion," (Jan. 28, 2010), http://www.mayoclinic.com/health/testicular-torsion/DS01039/DSECTION=causes.

(Dkt. No. 18 at 8-9.)

In conclusion, despite being granted leave to amend on several occasions, plaintiff failed to allege facts demonstrating that each named defendant acted with a sufficiently culpable state of mind.  In other words, plaintiff failed to show each defendant not only knew there was a risk to plaintiff, but that the defendant was also aware of the risk, yet acted in disregard of that risk.  In addition to the original complaint, plaintiff has had four opportunities in which to allege facts sufficient to state cognizable Eighth Amendment claims, but failed to do so.  Indeed, plaintiff's most recent effort was simply to re-file the original complaint with different exhibits.[9]

In light of these opportunities, and plaintiff's failure to allege facts demonstrating that any defendant acted with a culpable state of mind, plaintiff's third amended complaint is dismissed.  While the court is sympathetic to the pain and suffering plaintiff sustained as a result of the testicular torsion and the subsequent orchiectomy, plaintiff alleged no facts demonstrating that defendants were deliberately indifferent to plaintiff's serious medical needs.  Rather, plaintiff alleged facts suggesting that his initial symptoms may have been misdiagnosed as constipation, yet plaintiff was medically treated, including a battery of tests, and when plaintiff did present with testicular pain, he was appropriately treated and shortly thereafter provided the surgery

---

[9] The new exhibits do not alter the above analysis.  Plaintiff provided a copy of instructions for addressing constipation.  (Dkt. No. 27 at 11.)  Plaintiff attached a copy of the November 2, 2010 post operative report concerning the orchiectomy, which states that the date of plaintiff's torsion was October 20, 2010.  (Dkt. No. 27 at 13.)  Plaintiff's orchiectomy was performed on October 20, 2010.

11

1  required by his medical condition.  Plaintiff failed to allege facts demonstrating that a particular
2  defendant was intentionally responsible for delay that resulted in the loss of plaintiff's right
3  testicle.  Thus, at most, plaintiff has presented facts consistent with a cause of action for
4  negligence or medical malpractice, which is insufficient to allege a plausible claim for relief
5  under Twombly and Iqbal.  Therefore, plaintiff's third amended complaint is dismissed without
6  leave to amend.

       In accordance with the above, IT IS HEREBY ORDERED that:

       1.  Plaintiff's third amended complaint is dismissed without leave to amend; and

       2.  This action is closed.

DATED:  April 15, 2013

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

jack2116.dm